
J. MICHAEL KEYES, (State Bar No. 262281)
mike.keyes@klgates.com
KATHRYN M. WHEBLE (State Bar No. 176109)
kathryn.wheble@klgates.com
K&L GATES LLP
Four Embarcadero Center, #1200
San Francisco, California 94111
Telephone: 415-882-8200
Facsimile: 415-882-8220

Attorneys for Plaintiff Quia Corporation

**ORIGINAL FILED**

MAY 3 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LB

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUIA CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation; and FISHER-PRICE, INC., a Delaware corporation;<br><br>Defendants. | Case No. CV 10 1902<br><br>**VERIFIED COMPLAINT FOR SERVICEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Quia Corporation hereby alleges the following Verified Complaint against Defendants, Mattel, Inc. and Fisher-Price, Inc. as follows:

### INTRODUCTION

This is an action to obtain preliminary and then permanent injunctive relief and recover damages arising from infringement of Quia Corporation's distinctive, federally-registered servicemark, IXL, by Fisher-Price, Inc. and Mattel, Inc. (collectively referred to herein as "Defendants"). Quia Corporation is the registrant and owner of U.S. Servicemark Registration No. 3,596,291 for the name "IXL" used in commerce for educational services in

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                         1

the fields of math, science, and language development for students in the pre-elementary school stages of development through sixth grade and beyond. Both Mattel, Inc. and Fisher-Price, Inc. have adopted and used in commerce the name "iXL" to advertise and promote a forthcoming educational toy that is marketed variously by them as a "learning system" and "multi-tech, six-in-one smart device for preschoolers." As detailed herein, if Defendants are not immediately enjoined from their planned use of the iXL name, the relevant consuming public is likely to be confused. This would cause significant damage and harm to Quia Corporation, its trademark, and the significant goodwill associated with its IXL program.

Further, given the significant web presence and financial prowess of Defendants (and Defendants' robust corporate customers such as Wal-Mart, Toys "R" Us, and Target), Defendants' adoption, use, and marketing of the iXL name (particularly over the Internet) is likely to drown out or at least significantly diminish Plaintiff's ability to effectively market and sell its IXL program to the public. Not only would this create a deleterious effect on Plaintiff's business and educational initiatives, it would adversely affect the ability of educators, families, and students to gain ready access to the IXL program—a program that has garnered significant praise and that is gaining great strength and recognition in the industry as a very successful learning and teaching device.

## THE PARTIES, JURISDICTION AND VENUE

1. Plaintiff Quia Corporation ("Quia" or "Quia Corporation") is a Delaware corporation with its principal place of business in San Mateo, California.

2. Mattel, Inc. ("Mattel") is a publicly-traded Delaware corporation with its worldwide headquarters and principal place of business located in El Segundo, California. Mattel is a registered foreign corporation with the California Secretary of State and authorized to transact intrastate business in this state. On information and belief, Mattel is the largest toy company in the world based on revenue. Mattel also maintains systematic and continuous

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                          2

contacts with this state by selling products to citizens of this state and residents within this judicial district, and engaging in extensive marketing and promotional activities here, including the advertising and promotion of the accused product bearing the infringing name "iXL."

3. Fisher-Price, Inc. ("Fisher-Price") is a Delaware corporation with its corporate headquarters located in East Aurora, New York. On information and belief, Fisher-Price is a wholly-owned subsidiary of Mattel. Fisher-Price is a registered foreign corporation with the California Secretary of State and authorized to transact intrastate business in this state. Fisher-Price maintains systematic and continuous contacts with this state by selling products to citizens of this state and residents within this judicial district, and engaging in extensive marketing and promotional activities here, including the advertising and promotion of the accused product bearing the infringing name "iXL."

4. Jurisdiction is vested in this Court under 28 U.S.C. § 1338 as this is a dispute concerning the rights of the parties under the Federal Lanham Act, 15 U.S.C. § 1051 *et seq.* Jurisdiction is also vested in this Court under 28 U.S.C. § 1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## INTRADISTRICT ASSIGNMENT

6. Intradistrict assignment of any Division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

## FACTS SUPPORTING CAUSES OF ACTION

(A) **Quia's Development, Marketing, and Selling of The IXL Program.**

7.      Quia Corporation was founded in 1998 with the goal of revolutionizing education through technology offered over the Internet. Quia is a privately-held educational technology company and a recognized leader in interactive content delivery over the Internet. Quia's e-learning products and services combine technical sophistication with ease of use for educators and learners alike.

8.      In 2007, after significant research and development efforts, Quia launched one of its most innovative and successful e-learning, web-based products, "IXL." The IXL program is an engaging, individualized math and language learning experience for students. Based on the content of popular textbooks and state standards, the IXL program generates unlimited practice questions on a multitude of mathematical concepts for children in the pre-elementary school stages of development through sixth grade and beyond. The IXL program is replete with features to keep students absorbed in practicing — including colorful images, awards for improvement, and varied problem types that teach math in a fun, innovative way and reinforce reading skills and comprehension in the process.

9.      The IXL program is advertised and promoted by Quia through its company website, http://www.Quia.com. It is also advertised and promoted through http://www.ixl.com and http://www.ixlmath.com, both of which are operated and controlled by Quia. The IXL program is provided to consumers via a web interface that allows students, parents, and educators to log on to the IXL websites and access the math problems, charts, graphs, and other components of the IXL program directly from a computer terminal, or even handheld devices such as an iPhone® or iPad®. True and correct copies of printouts from the IXL websites showing the IXL interface and various sample math problems are attached hereto as Exhibit A.

10.     Quia offers its IXL program to families on either a monthly or annual basis. The basic monthly family membership costs $9.95 and the basic annual family membership

costs $79.00. Attached hereto as Exhibit B is a true and correct copy of the pricing plan for the IXL program as it appears on the ixl.com website. Quia also offers its IXL program to schools on an annual membership plan that costs $199.00 for each 30 student classroom that intends to use the IXL program. *See* Exhibit B.

11. Since 2007, more than 30,000 family memberships have been provided by Quia to IXL program subscribers. Over 20,000 of those memberships constitute current IXL program subscribers. Since 2007, Quia has provided at least 1,800 separate IXL program school memberships to educational facilities located throughout the United States. Additionally, the IXL program has been provided to subscribers located in over 140 countries throughout the world.

12. Quia is able to track approximately how many math problems are actually answered by IXL program subscribers. Since 2007, approximately: (a) 13,510,264 pre-K math problems have been attempted and answered; (b) 17,342,498 Kindergarten math problems have been attempted and answered; and (c) 30,905,557 1st grade math problems have been attempted and answered.

13. The IXL program continues to grow wildly in popularity with substantial increases in revenue based on membership subscriptions. For example, over the last 12 months alone, IXL membership subscriptions in any given month have exploded as compared to the same month of the preceding year as depicted in the following chart:

| Revenue Increase from IXL Program Memberships |
|---|
| April 2009 saw a 1501.2% increase over April 2008 |
| May 2009 saw a 722.6% increase over May 2008 |
| June 2009 saw a 1010.4% increase over June 2008 |

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                    5

| Revenue Increase from IXL Program Memberships |
|---|
| July 2009 saw a 539.1% increase over July 2008 |
| August 2009 saw a 1260.5% increase over August 2008 |
| September 2009 saw a 943.0% increase over September 2008 |
| October 2009 saw a 805.0% increase over October 2008 |
| November 2009 saw a 541.8% increase over November 2008 |
| December 2009 saw a 860.3% increase over December 2008 |
| January 2010 saw a 662.9% increase over January 2009 |
| February 2010 saw a 619.5% increase over February 2009 |
| March 2010 saw a 558.1% increase over March 2009 |

14. There has also been significant increases in the number of math problems that are completed by subscribers on a monthly basis as compared to the number of math problems completed on a monthly basis of the preceding year.

15. End users, parents, and teachers who have used (and taught with) the IXL program have praised its ingenuity, ease of use, and its accessibility, among many other attributes. Attached hereto as Exhibit C are true and correct copies of just some of the effusive testimonials Quia has received regarding the IXL program, specifically those

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                    6

testimonials regarding the modules for pre-elementary and early elementary students. Additionally, numerous third party reviews of the IXL program laud it for its effectiveness as a learning tool. Attached hereto as Exhibit D are true and correct copies of just some of the third party endorsements and reviews of the IXL program, including a positive review by the California Learning Resource Network, founded by the California Department of Education.

16. On March 24, 2009, The United States Patent and Trademark Office ("USPTO") issued U.S. Servicemark Registration No. 3,596,291 (the "'291 Registration") for "IXL" to Quia for "educational services, namely, online instruction in the fields of math, science, English and foreign languages for use in the K-12 educational market." Attached hereto as Exhibit E is a true and correct copy of the '291 Registration.

**(B) Defendants Adopt and Use an Identical Name—iXL—to Market and Sell Their Learning System Product.**

17. On approximately February 15, 2010, Mattel and Fisher-Price announced at the 2010 "Toy Fair" Tradeshow in New York City that they were preparing to sell in commerce their new "iXL" Learning System device for young children starting in July 2010. As explained in a press release issued by Mattel and Fisher-Price, the iXL is clearly an educational device to help young kids learn: "iXL Learning System is a child's portable window to a whole new world of learning and entertainment with six great applications: Story Book, Game Player, Note Book, Art Studio, Music Player and Photo Album." Attached hereto as Exhibit F is a true and correct copy of the press release issued by Mattel and Fisher-Price on February 15, 2010. Mr. Robert Eckert, Mattel's CEO, stated in the press release "[w]e have invested more research and development dollars into iXL than any other product in our 2010 Fisher-Price product line and it definitely shows." *See id.* at p. F-2. Another press release issued by the Defendants calls the iXL Learning System the "hottest tech learning product[] for preschoolers" and that this "dynamic, multi-app smart device puts

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                          7

learning fun into the ultimate handheld gadget." Attached hereto as Exhibit G is a true and correct copy of the press release issued by Mattel and Fisher-Price on February 11, 2010. *See* Exhibit G, p. G-4. Mattel and Fisher-Price indicated that their iXL Learning System will retail for "approximately $79.99"—a nearly identical price as Quia's annual IXL family membership plan. *Compare* Ex. F, p. F-2 *with* Exhibit B, p. B-2. As one blogger recently exclaimed about the iXL "[a]t $79.99, this could be a big hit when it hits shelves in October — just in time for Christmas." A true and correct copy of this blog entry is attached hereto as Exhibit H.

18. The Defendants are beginning to publish over the Internet marketing and promotional material announcing their forthcoming iXL Learning System. For example, the Fisher-Price website, http://www.fisher-price.com, prominently features a picture of the iXL on the homepage. Attached hereto as Exhibit I is a true and correct copy of a printout from the Fisher-Price website printed on April 30, 2010. Other Fisher-Price webpages promote the iXL as "the ultimate smart device." A video on the Fisher-Price website further underscores the educational nature of the iXL Learning System, including depictions of simple mathematical equations swirling around images of young children working with it. Attached hereto as Exhibit J are true and correct copies of screen shots captured from the Fisher-Price iXL video. Mattel's website, http://www.mattel.com, also contains several prominent links to what is called "our sites"—one of which is the Fisher-Price website where the aforementioned advertising and promotional material is displayed. Many other websites and blogs have posted reviews, comments, and videos about the iXL Learning System in anticipation of the product's release later this summer. Attached hereto as Exhibit K are true and correct copies of just some of these third party reviews. Several of these reviews emphasize how the iXL Learning System helps teach or reinforce mathematical concepts for children ages 3-6:

- "The Game Player helps children learn about numbers and counting while playing games." Exhibit K, p. K-24;
- "Game Player-children can learn about numbers and counting while playing exciting games." *Id.* at p. K-22.
- "Most activities reinforce numbers, sequencing and counting." *Id.* at p. K-9;
- "With this great variety of applications, your child will find endless activities that will reinforce numbers, sequencing, counting, and vocabulary." *Id.* at p. K-12;
- "Game Player – preloaded with 1 classic arcade-style game, which has 3 levels and teaches numbers, sequencing and counting." *Id.* at pp. K-17, K-29;
- "Your child can learn handwriting by tracing letters and numbers." *Id.* at p. K-22.

(C) **<u>Defendants' Conduct Is Likely To Cause Significant Confusion and Hinder The Ability of Consumers to Readily Obtain the IXL Program—A Program That Has a Powerful and Proven Track Record of Helping Students Learn</u>**.

19. The Defendants' planned use of the iXL name is likely to cause significant and irreparable consumer confusion in the marketplace for at least the following reasons:

- First, Plaintiff's registered and inherently distinctive servicemark, IXL, is identical to Defendants' iXL name that it has adopted for its Learning System smart device for children;
- Second, Plaintiff's IXL product is technology-based and develops language and mathematical skills for children in pre-elementary school. Defendants' iXL product is touted as a "multi-app, smart device for children," *see* Exhibit G, that helps children *learn about numbers and counting* while playing games" and "*teaches numbers, sequencing and counting*." *See* Exhibit K, pp. K-24, K-17, K-29 (emphasis supplied);

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                              9

- Third, Plaintiff's IXL program basic family membership plan retails at $79.00. Similarly, Defendants' product is going to sell at retail for approximately $79.99, which will further exacerbate consumer confusion.

- Fourth, even though it has been less than three months since Defendants started promoting their forthcoming iXL product, the Internet is already awash with overlapping references to both the Plaintiff's IXL products and services and the Defendants' iXL Learning System. For example, a Google® search using any of the following queries IXL, iXL, or ixl produces very similar results: Quia's IXL website is listed in the top two results, followed by two other websites that review and provide pictures and commentary about the Defendants' iXL Learning System. A true and correct copy of printouts from the aforementioned Google® search results (and other similar results using similar queries) are attached hereto as Exhibit L. True and correct copies of similar search queries (using Yahoo!® and other search engines) producing similar search results are set forth in Exhibit M.

20. Additionally, given the enormous size and financial might of Defendants, it is quite likely that once the iXL Learning System is offered for sale and sold, it could completely overpower and suffocate Quia's ability to effectively market its IXL program over the Internet. Mattel devotes substantial resources to marketing and promotional activities. As Mattel recently indicated to the Securities and Exchange Commission ("SEC") in Mattel's 10-K filing for 2009:

> Mattel supports its product lines with extensive advertising and consumer promotions. Advertising takes place at varying levels throughout the year and peaks during the traditional holiday season. Advertising includes television and radio commercials, and magazine, newspaper, and internet advertisements. Promotions include in-store displays, sweepstakes, merchandising materials, and major events focusing on products and tie-ins with various consumer products companies.

Attached hereto as Exhibit N are true and correct copies of excerpts from Mattel's December 31, 2009, 10-K filing with the SEC (hereinafter referred to as "Mattel's 10-K")(emphasis supplied); *see* Exhibit N, p. N-9.

21. Mattel's advertising and promotional financial figures disclosed to the SEC clearly demonstrate the enormous size and strength of the company: "[d]uring 2009, 2008, and 2007, Mattel incurred expenses of $609.8 million (11.2% of net sales), $719.2 million (12.2% of net sales), and $708.8 million (11.9% of net sales), respectively, for advertising and promotion." *See* Exhibit N, p. N-9. Given that: (a) Mattel has a long track record of engaging in extensive advertising; (b) Mattel's CEO has stated that Mattel "invested more research and development dollars into iXL than any other product in our 2010 Fisher-Price product line"; and (c) Mattel listed its "***IXL® Learning System***"[1] as one of its 2010 products that it plans to actively promote and sell this year, there is a strong likelihood that Mattel's marketing efforts alone could drown out Quia's IXL program from the Internet marketplace. But the potential harm to Quia does not just end with Mattel's marketing efforts.

22. Mattel's three largest customers in 2009 were Wal-Mart, Toys "R" Us, and Target, in that order. *See* Mattel's 10-K, Exhibit N, p. N-7. All three of these corporate titans have significant e-commerce sites where they advertise, promote, and sell products and toys for young children. All of these companies promote and offer for sale over their

---

[1] Mattel capitalized the "i" of IXL in its 10-K filing. *See* Exhibit N, p. N-6. Even though Mattel indicated in its 10-K filing that its "IXL" was a federally-registered trademark (as indicated by Mattel's use of the "®" symbol) there is no record of Mattel owning any such federal registration according to the USPTO's records. In fact, on information and belief, Mattel only recently applied for trademark protection for iXL in January 2010.

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                     11

respective websites substantial selections of Mattel and Fisher-Price toys and related merchandise. Attached hereto as Exhibit O are true and correct copies of printouts from the websites owned and operated by Wal-Mart, Toys "R" Us, and Target, respectively. If any one of these companies began advertising, promoting, and selling the iXL Learning System on their websites, this would likely lead to further confusion and could greatly diminish Quia's ability to market and promote its IXL program online. It could also stymie the ability of thousands of parents, educators, and young students to obtain ready access to the IXL Program.

23. Quia first learned of the iXL Learning System and the Defendants' intention to launch a product bearing Plaintiff's federally-registered servicemark in mid-February. At about this same time in February, Quia learned that Mattel had filed an application with the USPTO on approximately January 13, 2010, to register the name "iXL." As described by Mattel in its trademark application, Mattel sought to register "iXL" with the description of the goods as "[c]omputer software for use with ***children's*** handheld ***learning system***" and "***children's educational toys*** and devices, namely, handheld ***learning systems*** featuring interactive digital books, games, art activities, music players, writing tools and photo albums." Attached hereto as Exhibit P is a true and correct copy of Mattel's trademark application, U.S. Trademark Application No. 77911002 (the "'002 Application") (emphasis supplied). As the underscored portions of Mattel's '002 Application show, Defendants' iXL product contains a significant (indeed, prominent) educational component for children. This description is wholly consistent with Fisher-Price's description of iXL on the Fisher-Price website, as well as the statements made by Mattel's CEO at the 2010 Toy Fair.

24. On April 7, 2010, Quia's counsel sent a letter to Mattel's counsel asking for several pieces of information about the iXL Learning System so that Quia could fully evaluate whether the iXL Learning System infringed on Quia's servicemark rights. A true and correct

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                              12

copy of this letter is attached hereto as Exhibit Q. Approximately one week later, instead of providing the information as requested by Quia's counsel, Mattel's counsel responded with a phone call to Quia's counsel and asserted that Mattel believed there would be no "likelihood of confusion" in the marketplace. Nevertheless, within days after this conversation, Mattel filed a "Request for Express Abandonment" of its '002 Application. Attached hereto as Exhibit R is a true and correct copy of the Notice of Express Abandonment filed by Mattel. On that same day, Mattel filed a new trademark application with the USPTO for iXL. Attached hereto as Exhibit S is a true and correct copy of Mattel's second trademark application, U.S. Trademark Application No. 85017208 (the "'208 Application").

25. According to Mattel's counsel, this new application was purportedly filed to "better describe" Defendants' iXL Learning System. Attached hereto as Exhibit T is a true and correct copy of a letter dated April 23, 2010 from Mattel's counsel. This time, however, Mattel stripped from its application **all references** in its goods description to "children," "learning," and "education." This is how Mattel now describes its iXL Learning System in its most recent trademark application:

- HANDHELD MOBILE COMPUTER INCORPORATING A MUSIC PLAYER, CAMERA, DIGITAL NOTEBOOK AND ELECTRONIC PHOTO ALBUM; COMPUTER SOFTWARE FOR USE IN READING ELECTRONIC BOOKS, PLAYING COMPUTER GAMES, CREATING AND VIEWING ART, PLAYING MUSIC, WORD PROCESSING, AND CREATING AND VIEWING PHOTO ALBUMS, ALL FOR A HANDHELD MOBILE COMPUTER;

- TOYS AND GAMES, NAMELY, HANDHELD GAMES WITH LCD DISPLAY FOR READING ELECTRONIC BOOKS, PLAYING COMPUTER GAMES, CREATING AND VIEWING ART AND PHOTO ALBUMS, PLAYING MUSIC AND WORD PROCESSING.

26. This "new description" of iXL does not "better describe" Defendants' product as claimed by Mattel's counsel. Instead, on information and belief, it represents a transparent, after-the-fact attempt by Mattel to avoid a rejection of its '002 application at the USPTO and

to try to make it appear that the parties' respective products are unrelated (when they clearly are related, as indicated in this Verified Complaint).

## CAUSES OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. §§ 1114-1117; Lanham Act § 32)

Quia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

27. Without Quia's consent, Defendants have used, in connection with the sale, offering for sale, distribution or advertising of their product, a name that infringes upon Quia's registered IXL servicemark.

28. As a direct and proximate result of Defendants' infringing activities, Quia has suffered and will continue to suffer substantial damage.

29. Defendants' infringement of Quia's servicemark as alleged herein is an exceptional case and was intentional, entitling Quia to treble its actual damages and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and 1117(b).

### FEDERAL UNFAIR COMPETITION
### (False Designation of Origin and False Description)
### (15 U.S.C. § 1125(a); Lanham Act § 43(a))

Quia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 29 of this Complaint.

30. Defendants' conduct constitutes the use of a name or term tending falsely to describe the infringing products, within the meaning of 15 U.S.C. § 1125(a)(1). Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship or approval of the infringing products to the detriment of Quia and in violation of 15 U.S.C. § 1125(a)(1).

31.     As a direct and proximate result of Defendants' infringing activities, Quia has suffered and will continue to suffer substantial damage. Defendants' infringement of Quia's servicemark as alleged herein is an exceptional case and was intentional, entitling Quia to treble its actual damages and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and 1117(b).

## CALIFORNIA UNFAIR COMPETITION
### (Cal. Bus. & Prof. Code § 17200)

Quia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 31 of this Complaint.

32.     Defendants' infringement of Quia's servicemark constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deception, untrue or misleading advertising" within the meaning of California Business & Professions Code Section 17200.

33.     As a consequence of Defendants' actions, Quia is entitled to injunctive relief and an order that Defendants disgorge all profits on the manufacture, use, display or sale of infringing goods.

## PRAYER FOR RELIEF

WHEREFORE, Quia prays that this Court grant it the following relief:

1.      Adjudge that Quia's IXL servicemark has been infringed by Defendants in violation of Quia's rights under common law, 15 U.S.C. § 1114, and/or California law;

2.      Adjudge that Defendants have competed unfairly with Quia in violation of Quia's rights under common law, 15 U.S.C. § 1125(a), and/or California law;

3.      Adjudge that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with

they; and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

    (a) manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods that display any words or symbols that so resemble Quia's IXL servicemark as to be likely to cause confusion, mistake or deception, on or in connection with any product that is not authorized by or for Quia;

    (b) using any word, term, name, symbol, device or combination thereof that causes or is likely to cause confusion, mistake or deception as to the affiliation or association of Defendants or their products with Quia or as to the origin of Quia's goods, or any false designation of origin, false or misleading description or representation of fact;

    (c) further infringing the rights of Quia in and to any of its servicemarks in its brand products or otherwise damaging Quia's goodwill or business reputation;

    (d) otherwise competing unfairly with Quia in any manner; and

    (e) continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

4. Adjudge that Defendants be required immediately to supply Quia's counsel with a complete list of individuals and entities to whom or which they have sold, offered for sale, distributed, advertised or promoted the infringing product as alleged in this Complaint;

5. Adjudge that Quia recover from Defendants its damages and lost profits in an amount to be proven at trial;

6. Adjudge that Defendants be required to account for any profits that are attributable to their illegal acts, and that Quia be awarded the greater of (1) three times Defendants' profits or (2) three times any damages sustained by Quia, under 15 U.S.C. § 1117, plus prejudgment interest;

7. Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of their infringing activities;

8. Direct the USPTO to refuse registration to U.S. Trademark Application Serial No. 85017208;

9. Adjudge that Quia be awarded its costs and disbursements incurred in connection with this action, including Quia's reasonable attorneys' fees and investigative expenses; and

10. Adjudge that all such other relief be awarded to Quia as this Court deems just and proper.

Dated: May 3, 2010

Respectfully submitted,

**K&L GATES LLP**

By: _____
J. Michael Keyes

Attorneys for Plaintiff
QUIA CORPORATION

**DEMAND FOR JURY TRIAL**

Plaintiff Quia Corporation demands that this action be tried to a jury.

Dated: May 3, 2010

K&L GATES LLP

By: _____
J. Michael Keyes

Attorneys for Plaintiff
QUIA CORPORATION

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                    17

## VERIFICATION

I, Paul Mishkin declare:

I am the President of QUIA CORPORATION, the Plaintiff in this action and authorized to give this Verification. I have read the foregoing Complaint for Servicemark Infringement, and know the contents thereof. The same is true of my knowledge except as to those matters that are stated on information and belief, and as to those matters, I believe they are true.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 30 day of April, 2010, at San Mateo, California.

_____
Paul Mishkin, President
Quia Corporation

VERIFIED COMPLAINT FOR SERVICEMARK
INFRINGEMENT                                        18